## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANN SEBASTIANI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 21-1114 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | Re: ECF No. 61 |
| WESTMORELAND COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

**KELLY, Magistrate Judge**

Plaintiff JoAnn Sebastiani ("Sebastiani") initiated this action against Defendants Westmoreland County (the "County"), Sean Kertes ("Kertes"), Gina Cerilli Thrasher ("Cerilli Thrasher"), and Doug Chew ("Chew") (collectively, "Defendants"), alleging five claims arising from her employment by the County. ECF No. 1.

Presently before the Court is a Motion for Summary Judgment filed by Defendants. ECF No. 61. For the reasons that follow, the Motion for Summary Judgment will be granted in part and denied in part.[1]

## I.    FACTUAL BACKGROUND

At all relevant times, Defendants Kertes, Cerilli Thrasher, and Chew were elected Commissioners for Westmoreland County. ECF No. 63 ¶ 87. The Board of Commissioners of Westmoreland County ("the Board of Commissioners") directly supervises the County

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed. ECF Nos. 15 and 16.

department directors who are not elected, which includes the Elections Bureau.[2] Id. ¶ 1. The Board of Commissioners does not manage day-to-day operations of the Elections Bureau. Id. ¶¶ 2-3.

The Board of Commissioners serves as the Board of Elections when it is not an election year for a Commissioner seat. Id. ¶ 4. The Board of Commissioners supervises the Elections Bureau, and the Board of Elections oversees the operation, review, and certification of the elections. Id. ¶¶ 3, 5.

The Board of Commissioners also oversees the Human Resources ("HR") Department, but does not manage the day-to-day functions. Id. ¶ 6. Consequently, the Board of Commissioners does not have much interaction with the HR Department, except for weekly updates by the HR Director. Id. ¶ 8. The Commissioners do sign-off on employee terminations. Id. ¶ 7.

Sebastiani was hired by the County in 2015. ECF No. 1 ¶ 8. She was employed by the County when she suffered a work-related injury on November 14, 2018, including a concussion and traumatic brain injury. ECF No. 63 ¶ 9. Consequently, she suffers from persistent post-concussion symptoms including post-traumatic tinnitus, intermittent aphasia, headaches, anxiety, insomnia, confusion, and dizziness. Id. ¶ 10. Sebastiani had been receiving workers' compensation benefits since November 2018 as a result of her injury. Id. ¶ 15.[3]

---

[2] Both parties use the terms "Elections Department," "Department of Elections," and "Elections Bureau" interchangeably. See ECF Nos. 58, 63. For the purposes of this Opinion, the Court will use "Elections Bureau."

[3] At all times relevant to this lawsuit, Sebastiani's medical bills related to the 2018 workplace injury were being paid through workers' compensation benefits, but she was not receiving wages. ECF No. 63 ¶ 15.

The Director of Elections ("Elections Director")[4] is a nonpartisan position. Id. ¶ 88. When interviewing candidates for the position, the Board of Commissioners made it clear that they did not want someone who was active in politics. Id. ¶ 90. The partisan break down of the Board of Commissioners in 2020 was two Republicans (Chew and Kertes) and one Democrat (Cerilli Thrasher). Id. ¶ 87.

On Friday, August 7, 2020, the Commissioners approached Sebastiani about taking the Elections Director position. Id. ¶ 77. The HR Director, Alexis Bevan ("Bevan"), called Sebastiani on Wednesday, August 12, 2020 and offered her the position. Id. ¶ 79. Sebastiani accepted and started in the Elections Director position on Monday, August 17, 2020. Id. ¶ 80. Throughout the interview process, there was no concern that Sebastiani had not worked on elections in her prior position, as that experience is difficult to find. Id. ¶¶ 92, 95-96. Chew did not agree to hire Sebastiani because he did not think she was qualified. Id. ¶¶ 99-100.

Sebastiani alleges that on August 12, 2020, the same day that she accepted the position, Kertes' secretary, Francine Gibbon ("Gibbon"), called Sebastiani and informed her that it was imperative that Sebastiani change her registered party affiliation from Democrat to Republican. ECF No. 64-31 at 2. Sebastiani changed her political party based solely on the phone call from Gibbon. ECF No. 63 at ¶ 82. Gibbon told Sebastiani to say she changed her political party registration because she did not like the Democratic Vice-Presidential candidate, who was African American. Id. ¶ 83. None of the three Commissioners personally told Sebastiani that she had to be registered with a certain political party to be the Elections Director. Id. ¶ 84.

For the May 2021 primary election, the Commissioners supported Sebastiani in her role as Elections Director by calling for an all-hands-on deck approach to assist the Elections Bureau

---

[4] Both parties use the terms "Director of Elections," "Elections Director," and "Election Director" interchangeably. See ECF Nos. 58, 63, 65. For the purposes of this Opinion, the Court will use "Elections Director."

during the election. Id. ¶ 122. Nevertheless, several issues occurred over the initial months of Sebastiani's tenure.

A Magisterial District Justice was left off the ballot in the May 2021 primary election. Id. ¶ 138. Sebastiani accepted responsibility for the omission and took steps to correct it. Id. ¶ 139. She had received an order earlier in the year about redistricting, but the race was still missed on the ballot. Id. ¶ 146. This resulted in the mail-in and absentee ballots having to be reissued, along with a variety of other mitigating measures. Id. ¶¶ 147-150.

The County had to amend the certification in the May 2021 election, because there were approximately 15 elections without a winner. Id. ¶ 152. At a Board of Elections meeting to pre-certify election results, the Board of Elections was presented with a huge stack of papers that it had not seen before. Id. ¶ 153. The Board of Elections pre-certified the election results. Id. ¶ 155. However, when people started looking at the results, they realized they had to amend the certification because it was not properly reported. Id. ¶ 155. Chew may have used an "f-word" when discussing Sebastiani's work at this time and called a large stack of write-in ballots a "pile of shit." ECF No. 64-28 at 33-34; ECF No. 64-30 at 20-21.

The County Solicitor received a call in 2021 because an election in Penn Township put a constable race on the ballot for May 2021, when there was no constable race in Penn Township that year. ECF No. 63 ¶ 160. Again, the ballot had to be fixed. Id. ¶ 162. The County had to overnight ballots and set up additional drop boxes the weekend before the election. Id.

Throughout this time, the Elections Bureau had staffing issues, and the Board of Elections was receiving internal and external complaints. Id. ¶¶ 164-165. The complaints involved Sebastiani's job performance, as well as internal infighting between staff members. Id. ¶¶ 166-169. There was an independent, external investigation performed regarding the Elections

Bureau by Attorney Gretchen Love. <u>Id.</u> ¶ 170. The results from the investigation demonstrated that Sebastiani's staff were actively working against her and deliberately delaying work. <u>Id.</u> ¶¶ 172-173. Two employees were terminated or resigned as a result of the investigation and no longer work for the Elections Bureau. <u>Id.</u> ¶ 174.

Sebastiani alleges that she was also subject to "near constant harassment" from subordinates, the three Commissioners, and the County Solicitor. <u>Id.</u> ¶ 113. She testified that she spoke to Cerilli Thrasher regarding the harassment. ECF No. 64-31 at 24.

On April 1, 2021, HR Director Bevan sent a letter to Sebastiani documenting the County's concerns about Sebastiani's performance as the Elections Director. ECF No. 58 ¶ 2. The letter alleged Sebastiani had a lack of planning when bringing issues to the Board of Elections, as well as a lack of decision making. <u>Id.</u> ¶ 7. It also alleged many issues with Sebastiani's management of her department. <u>Id.</u> ¶ 8. The letter further alleged other issues, including: not attending training related to the upcoming primary election, despite scheduling the training with the third-party ballot service; lack of response to e-mails, phone calls and messages; providing improper fee waivers to candidates; and providing incorrect nomination petitions to candidates. <u>Id.</u> ¶ 9.

On April 6, 2021, Sebastiani provided a written response to Bevan's April 1, 2021 letter. <u>Id.</u> ¶ 10. She stated that she disagreed with the characterization and interpretation of the incidents listed in the letter. <u>Id.</u>

Sebastiani testified that she applied for FMLA leave on June 5, 2021. ECF No. 64-31 at 12. Additionally, as of June 5, 2021 her worker's compensation claim was still open. ECF No. 63 ¶ 16. Sebastiani recalls that she requested some of her workers' compensation benefits be reinstated sometime in June 2021, but does not specify the date. ECF No. 64-31 at 20.

Bevan sent another letter to Sebastiani, dated June 8, 2021, which was presented to Sebastiani in a meeting with HR on the same date. ECF No. 58 ¶ 11. The purpose of the letter was to provide Sebastiani with an explanation of the evidence the County had obtained during its investigation and to provide an opportunity for Sebastiani to offer any and all information by June 11, 2021 that may cause the County to reconsider taking disciplinary action. Id. ¶ 13. The issues included multiple errors related to the May 2021 primary including: mail-in and absentee ballots; placing a constable race that did not exist on a ballot; failing to meet deadlines; and an ongoing lack of response to e-mail, phone calls, and messages, among other issues. Id. ¶ 14. The deadline for Sebastiani's response was June 11, 2021. Id. However, Sebastiani was placed on paid suspension as of June 8, 2021. ECF No. 64-8.

Sebastiani informed Bevan on June 10, 2021 that she was having medical issues and could not respond to the June 8, 2021 letter in a timely manner. ECF No. 64-20. Bevan provided Sebastiani with the contact information for FMLA assistance, but did not offer her an extension. Id.

On June 11, 2021, Sebastiani responded to the June 8, 2021 letter in writing. ECF No. 58 ¶ 15. Again, she generally disagreed with Bevan's characterizations of her tenure as Elections Director, including that all referenced ballot errors were promptly discovered and addressed. Id.

At some point, HR Director Bevan presented facts regarding Sebastiani's job performance to the Board of Commissioners. ECF No. 63 ¶ 232. There was a review of all of the information gathered during the investigation about Sebastiani. Id. The decision to terminate Sebastiani's employment was a unanimous decision by the Board of Commissioners. Id. ¶¶ 222-223.

Bevan wrote Sebastiani a letter dated June 15, 2021, reporting on the ongoing investigation and informing Sebastiani that her response letters had not provided any additional information to consider or to contradict the findings of the investigation. ECF No. 58 ¶ 16. The letter also informed Sebastiani that her paid suspension was converted to an unpaid suspension upon receipt of Sebastiani's June 11, 2021 letter response. Id. ¶ 17. It reiterated that the County had offered Sebastiani two other jobs during the June 8, 2021 meeting and that Sebastiani had not yet responded to either job offer. Id. ¶ 18. The June 15, 2021 letter advised Sebastiani that if she did not accept either of the jobs by June 18, 2021, her employment with the County would be terminated. Id. ¶ 19.

Bevan advised Sebastiani of her termination effective June 18, 2021 in a letter dated June 22, 2021. ECF No. 58 ¶ 20.

## II.    PROCEDURAL HISTORY

Sebastiani initiated this action with the filing of a Complaint on August 23, 2021. ECF No. 1. In the Complaint, she brings five causes of action against Defendants, which are summarized in the below chart.

| Count | Claim | Allegations |
|---|---|---|
| I | 42 U.S.C. § 1983 – First Amendment Retaliation – Political Affiliation | Defendants violated Sebastiani's right to free speech under the First Amendment by demanding that she change her party affiliation in order to occupy the Elections Director position; retaliated against Sebastiani for resisting the violation of her First Amendment rights; and retaliated against Sebastiani because she refused to adopt Defendants' false proffered explanation for her switching party affiliation. ECF No. 1 ¶¶ 109-114. |
| II | 29 U.S.C. § 2601 et seq. – Family Medical Leave Act ("FMLA") Discrimination | Defendants retaliated against Sebastiani for applying for Family Medical Leave by terminating her. ECF No. 1 ¶¶ 115-118. |

| III | 42 U.S.C. § 1983 – Deprivation of Liberty Interest | Defendant created and disseminated a false and defamatory impression concerning Sebastiani in connection with her employment and termination to the media indicating that Sebastiani had been suspended and terminated because she mishandled the Elections Bureau, thereby depriving Sebastiani of her protected liberty interest in her reputation without due process. ECF No. 1 ¶¶ 119-128. |
| IV | Discrimination in Violation of Public Policy – Workers' Compensation Discrimination | Defendants displayed an animus against Sebastiani for her filing a workers' compensation claim by mocking and criticizing her symptoms that arose from the injury she sustained and terminated Sebastiani's employment shortly after she moved to reinstate her workers' compensation benefits. ECF No. 1 ¶¶ 129-131. |
| V | Intentional Infliction of Emotional Distress | Defendants engaged in harassment of Sebastiani with a tortious intent for the purpose of inflicting severe and acute emotional distress. ECF No. 1 ¶¶ 120-127 [sic]. |

On December 8, 2021, Defendants filed an Answer. ECF No. 12.

The parties conducted fact discovery. The Court conducted a telephonic status conference on December 4, 2023, with the participation of counsel for all parties. ECF No. 53. The Court subsequently issued a scheduling order and set dates for the filing of a joint statement of undisputed facts; motions for summary judgment; responses; and replies. ECF No. 54. The scheduling order specified that any motion for summary judgment and response must comply with Local Civil Rule 56. Id. ¶ 6.

The parties timely filed a Joint Concise Statement of Material Facts. ECF No. 58. The parties then filed a Consent Motion to modify the Court's Summary Judgment Scheduling Order by Two Weeks, ECF No. 59, which the Court granted, ECF No. 60.

In accordance with the modified scheduling order, on March 6, 2024 Defendants timely filed the pending Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and an extensive Appendix of cited exhibits. ECF Nos. 61-64.

On April 4, 2024, Sebastiani filed a Brief in Response to Defendants' Motions [sic] for Summary Judgment. ECF No. 65. Sebastiani did not file a Responsive Concise Statement of Material Facts in accordance with Local Civil Rule 56. She did attach four exhibits to the Response. ECF Nos. 65-1 - 65-4.

On April 15, 2024, Defendants filed a Reply to Plaintiff's Brief in Response to Motion for Summary Judgment and an Appendix with one exhibit. ECF Nos. 66-67.

The Motion for Summary Judgment is ripe for consideration.

## III.    LOCAL CIVIL RULE 56

Local Civil Rule 56 requires a party opposing a motion for summary judgment to file a response to a concise statement of material facts in which the nonmovant: (1) admits or denies "whether each fact contained in the moving party's Concise Statement is undisputed and/or material"; (2) sets forth "the basis for the denial if any fact contained in the moving party's Concise Statement is not admitted in its entirety . . . with appropriate reference to the record"; and (3) sets forth, "in separately numbered paragraphs any other allegedly material facts that are allegedly at issue." LCvR 56.C.1(a)-(c). In this case, this Court specifically instructed the parties that compliance with Local Civil Rule 56 was required. ECF No. 54 ¶ 6. Yet, as asserted by Defendants, Sebastiani failed to do so.

Courts in this District generally require "strict compliance" with Local Civil Rule 56. Mattis v. Overmeyer, No. 16-306, 2019 WL 2542283, at *2 (W.D. Pa. June 20, 2019) (collecting cases). When a party fails to comply with Local Civil Rule 56, "[a] [c]ourt [is] 'entitled to deem [Defendants'] statement of facts as admitted[.]'" Deforte v. Borough of Worthington, 364 F. Supp. 3d 458, 461 n.3 (W.D. Pa. 2019) (quoting Smith v. Addy, 343 F. App'x 806, 808 (3d Cir. 2009)). See also Byron v. Columbia Gas of Pennsylvania, No. 21-1365, 2022 WL 17406052, at

*1 (W.D. Pa. Dec. 2, 2022), aff'd, No. 22-3408, 2023 WL 8663876 (3d Cir. Dec. 15, 2023); Polansky v. Vail Homes, Inc., No. 13-296, 2016 WL 2643253, at *4 (W.D. Pa. May 10, 2016) (citing Janokowski v. Demand, No. 06-0618, 2008 WL 1901347, at *1 (W.D. Pa. Apr. 25, 2008)) (defendant's statement of material facts were deemed admitted for the purpose of summary judgment because of the plaintiff's violation of Local Rule 56.1(c)); GNC Franchising LLC v. Kahn, No. 05-1341, 2008 WL 612749, at *1 (W.D. Pa. Mar. 3, 2008) (the facts set forth in plaintiff's statement of facts were deemed admitted by defendants based on defendants' violation of Local Rule 56.1(E)); Ferace v. Hawley, No. 05-1259, 2007 WL 2823477, at *1 (W.D. Pa. Sept. 26, 2007) (citing Benko v. Portage Area Sch. Dist., No. 03-233J, 2006 WL 1698317 (W.D. Pa. June 19, 2006)).

Consistent with the prior holdings of this Court, as the result of Sebastiani's failure to respond as required by Local Civil Rule 56.C.1(a)-(c), all facts set forth in Defendants' Concise Statement of Material Facts and supported by evidence of record are deemed admitted.

Sebastiani did submit four additional exhibits with her Response Brief, ECF Nos. 65-1-65-4. The Court will consider these exhibits in determining whether Sebastiani demonstrated that there is a genuine dispute of material fact that would defeat Defendants' Motion for Summary Judgment. The Court also notes that, separate from the Concise Statement of Material Fact, the Court still must independently assess the record.

Having reviewed and addressed the above procedural issue, the Court turns to consider Defendants' Motion for Summary Judgment.

## IV.    STANDARD OF REVIEW

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). Further, "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" Clews v. Cnty. of Schuylkill, 12 F.4th 353, 358 (3d Cir. 2021) (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating to the court that the undisputed evidence is not enough to support one or more essential elements of the non-moving party's claim. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted). In making this assessment, the court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. New Jersey Dep't of Mil. &

11

Veterans Affs., 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23; Jakimas v. Hoffman La-Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## V.    DISCUSSION

### A.    Count I: Section 1983 – First Amendment Retaliation/Political Affiliation

In order to sustain a claim of discrimination based on political affiliation in violation of the First Amendment, a plaintiff must establish a *prima facie* case. See Galli v. NJ Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007). The United States Court of Appeals for the Third Circuit in Galli identified three requisite elements to assert such a claim. The plaintiff must establish that she: (1) was employed at a public agency in a position that does not require political affiliation; (2) was engaged in constitutionally protected conduct affiliated with a political party; and (3) that her conduct was a substantial or motivating factor in the government's employment decision. Id. at 270-271; Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 663 (3d Cir. 2002). "The First Amendment protects public employees not only from politically motivated discharge, but also from promotion, transfer, recalls, and other hiring decisions conditioned on political affiliation, unless the government can demonstrate that party affiliation is a proper requirement for the position." Galli, 490 F.3d at 270-271 (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990)).

If a plaintiff can establish a *prima facie* case, the public employer may avoid a finding of liability by proving that the same employment action would have been taken even in the absence of the protected activity. See Galli, 490 F.3d at 271 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

### 1. Municipal Liability as to Westmoreland County

### a. Monell liability

As to Sebastiani's claim against the County, Sebastiani must proffer facts to establish liability as set forth in Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). The United States Supreme Court held in Monell that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691. A municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. Id.

A county government such as Westmoreland County is a "person" for purposes of Section 1983 and can be liable only for its own misconduct. Id. at 692. To establish Section 1983 liability against a local government, a plaintiff must prove that a municipal "policy or custom" is the "moving force" of the constitutional violation at issue. Id. at 694. Thus, to sustain a claim for liability against the County, Sebastiani must specifically identify the policy or custom that caused the constitutional violations. Id.; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); Batts v. Giorla, 550 F. App'x 110, 113 (3d Cir. 2013).

In addition, a "plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (citing Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996)). A plaintiff "may do so by demonstrating an 'affirmative link' between the policy or custom and the particular

13

constitutional violation he alleges." Id. (citing Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990)).

> Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law.

Kniepp, 95 F.3d at 1212 (internal citations and brackets omitted). In other words, a custom is "an act 'that has not been formally approved by an appropriate decision maker but that is so widespread as to have the force of law.'" Natale, 318 F.3d at 584 (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997)). "Despite these requirements," a plaintiff need not "identify a responsible decision maker in his pleading," nor "prove that the custom had the [County's] formal approval." Estate of Roman, 914 F.3d at 798 (citing Bielevicz, 915 F.2d at 850-51 and Anela v. City of Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986)).

Under either route to a Monell claim, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. Watson v. Abington Township, 478 F.3d 144, 156 (3d Cir. 2007) (citing Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir. 1989)).

In their Brief in Support of Motion for Summary Judgment, Defendants argue that Sebastiani has not identified any specific policy or custom that was the "moving force" of the constitutional violations that she alleges at Count I of her Complaint against the County. ECF No. 62 at 7. Defendants also argue that there is simply no evidence of record that the County had any practice or custom in place of only awarding non-partisan jobs based on an applicant's political affiliation or that it was such a widespread practice that it could be consider well-settled custom. Id. Without such evidence, they argue that Sebastiani's claim fails. Id.

Sebastiani responds that Defendants' argument fails because it does not draw reasonable inferences in favor of her position. ECF No. 65 at 5. The Board of Commissioners is the ultimate decision maker with respect to County policy and election policy. Id. at 6. Therefore, a reasonable inference can be drawn that the body with final policy authority communicated via Gibbon, on behalf of the Republican majority of the Board of Commissioners, an edict that the Elections Director should be registered with the Republican Party. Id.

In the Reply Brief, Defendants reassert the argument that Sebastiani fails to identify what policy, practice, or custom was the driving force behind her termination. ECF No. 66 at 3. Defendants also argue that Sebastiani only has her own testimony to support her allegations. Id.

At the outset, the Court notes that summary judgment may be based on the affidavits and depositions of a party's own witnesses. Miller v. Wenerowicz, 135 F. Supp. 3d 306, 310 (E.D. Pa. 2015), aff'd, 648 Fed. App'x. 161 (3d Cir. 2016). It does not matter that it is Sebastiani's own testimony that supports her case. Further, as previously noted, the Court must view the record in the light most favorable to Sebastiani, as the nonmoving party, and make reasonable inferences in her favor. Miller, 135 F. Supp. 3d at 310.

Upon review, the record contains evidence to support Sebastiani's claim. She testified that Kertes' secretary, Gibbon, told Sebastiani to change her political affiliation from Democrat to Republican near or on the same day Sebastiani accepted the position of Elections Director. ECF No. 64-31 at 2. Sebastiani felt pressured to do so and Gibbon was "pushy." Id. at 2-3. Sebastiani further testified that Gibbon would "not take no for an answer" and "had me scan over, to prove that I did it." Id. at 5. While Sebastiani also testified that none of the three Commissioners directed her personally that she had to be registered with a certain political party to be the Elections Director, it is undisputed that Gibbon was Kertes' secretary. Id. at 6. Gibbon

celebrated Sebastiani's change of political party via text and later texted Sebastiani that "I just looked you and someone else up that we're both still listed as a D last week." ECF No. 64-26 at 1-2.

Defendants assert that Gibbon was not deposed, so any testimony regarding what Gibbons said is hearsay. ECF No. 62 at 9 n. 1. However,

> While evidence produced at the summary judgment stage must be "reduc[ible] to admissible evidence" at trial, Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court has rejected the view that "the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324, 106 S.Ct. 2548. . . . Accordingly, "hearsay evidence produced in sworn testimony opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e. 'in a form that would be admissible at trial.'" Williams v. West Chester, 891 F.2d 458, 466 n. 12 (3d Cir.1989).

Webb v. Merck & Co., 450 F. Supp. 2d 582, 588 n. 5 (E.D. Pa. 2006). Further, as Sebastiani points out, Gibbon, as personal secretary to Kertes, was an agent of both Kertes and the Board of Commissioners, and had at least apparent authority to speak on their behalf. As such, her statements may be construed as admissions by a party opponent and not hearsay. Fed. R. Evid. 801(d)(2).

Viewing the record in the light most favorable to Sebastiani, it is a reasonable inference that Sebastiani saw Gibbon as acting as an agent or representative, directed by at least one Commissioner. As stated, Monell liability may be imparted if the affirmative proclamation of a policy was by an official who has the final policy making authority – in this case, a Commissioner (Kertes at least). Therefore, the Court finds these allegations are sufficient to present an issue of fact related to the County's potential Monell liability.

### b.    Merits of the claim

The Court now turns to the merits of the political affiliation claim against the County. It is undisputed that the Elections Director position is a nonpartisan position. ECF No. 63 ¶ 88. It is also well established that political affiliation is protected activity. See Rutan, 497 U.S. at 62; Welch v. Ciampa, 542 F.3d 927, 938 (1st Cir. 2008) ("the First Amendment also prohibits government officials from taking adverse employment action against a non-policymaking government employee based on the employee's political affiliation"). Accordingly, the first and second prongs of the Galli test are met in the instant case. The remaining inquiry – as to the third prong of Galli – is whether Sebastiani has shown that her protected political affiliation was a substantial or motivating factor for any employment action. Galli, 490 F.3d at 270-271

Sebastiani alleges in the Complaint that her right to free speech under the First Amendment was violated in three ways: (1) "by demanding that she change her party affiliation to occupy the Elections Director Position;" (2) by retaliating against Sebastiani "for resisting the violation of her First Amendment rights;" and (3) by retaliating against Sebastiani "because she refused to adopt Defendants' false proffered explanation for her switching party affiliation – that she had switched because she did not like that the Democratic Vice Presidential Candidate was African American." ECF No. 1 ¶¶ 110-112.

In considering whether Sebastiani can satisfy the third prong of Galli, in order to make out a *prima facie* case of First Amendment political affiliation discrimination, the Court finds that a reasonable jury could conclude that Defendants violated Sebastiani's First Amendment rights when they demanded that she (or sent a clear message to her of the need to) change her party affiliation. Immediately after Sebastiani was offered the Elections Director position, Gibbon – an agent or representative of a Commissioner, a policymaker of the County – pressured

Sebastiani to change her party affiliation. With the majority of the Board of Commissioners being Republican, a reasonable jury could conclude that at least Kertes' decision to hire Sebastiani as Elections Director was motivated by this change.

With a *prima facie* case established, the burden then shifts to Defendants to demonstrate the same employment action – hiring Sebastiani as Elections Director would – have been taken even in the absence of the protected activity (if she had not changed her party registration). Galli, 490 F.3d at 271. The record reflects that Chew, a Republican, did not want to hire Sebastiani, a Democrat. ECF No. 63 ¶¶ 99-100. Chew did not sign the action form to hire Sebastiani for the Elections Director position. Id. ¶ 100. Also, as noted above, Kertes, through Gibbon, communicated the requirement of a change in registration to Republican. Further, the record also indicates that the Elections Director position is unique because it is difficult to find someone who is qualified in that specific field. Id. ¶ 95-97. However, given the complete record in this case, and making all reasonable inferences in Sebastiani's favor, it is a reasonable inference that Chew, after the vote to hire her, may have requested that Sebastiani change her party affiliation as a condition for hiring her. The Court finds that Defendants have not shown by a preponderance of the evidence that they would have hired Sebastiani for the Elections Direction position without her changing her registration to Republican. See Stuby v. Bedford Cnty., No. 12-47, 2013 WL 5724065, at *12 (W.D. Pa. Oct. 21, 2013).

However, to the extent Sebastiani alleges a wrongful termination retaliation claim, as a result of her political affiliation, Sebastiani has not established a *prima facie* claim. Sebastiani was hired in August 2020 and was not terminated until June 2021. The record demonstrates that she changed her political affiliation in August 2020. These events lack temporal proximity and are not suggestive of retaliation. Moreover, the record does not contain any evidence of

retaliation as a result of Sebastiani "resisting" changing her political affiliation or for refusing to adopt the proffered explanation.

Accordingly, as to the County, the Motion for Summary Judgment is denied as to her First Amendment political affiliation claim regarding the demand that Sebastiani change her political party at time of hire in August 2020, but is granted as to Sebastiani's political affiliation retaliation claim regarding her termination in June 2021.

### 2.    Liability of Individual Defendants

In order to establish a Section 1983 claim for the violation of a constitutional right against a person in their individual capacity at the summary judgment stage, a plaintiff must adduce evidence that each individual defendant, acting under color of law, violated her constitutional or statutory rights and caused the alleged injury. Fennell v. Penchishen, No. 19-111, 2019 WL 1934877, at *3 (E.D. Pa. April 30, 2019) (citing Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005)).

A supervisor can be held liable in his or her individual capacity under Section 1983 only if: (1) he or she personally participated in the constitutional violation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Id. (citations omitted).

Any official claim against an individual defendant, in addition to a municipality, is redundant. See Hafer v. Melo, 502 U.S. 21, 25 (1991).

In their Brief in Support of Motion for Summary Judgment, Defendants argue that any official capacity claim against the individual Commissioners must be dismissed, because it

would be redundant. ECF No. 62 at 8. They also argue that no individual Commissioner had personal involvement in Sebastiani's political affiliation claim. Id. at 8-9.

Sebastiani responds that each of the individual Commissioners acted through Gibbon in a scheme to have Sebastiani change her political affiliation at the time of hiring. ECF No. 65 at 4-5.[5] She does not address the specific issue of whether official capacity claims against the individual Defendants could remain if her Monell claim against the County proceeds. Id. at 5-6.

Defendants reply that Gibbon was not deposed in this case, and no evidence was set forth to "expose such a scheme." ECF No. 66 at 2.

As an initial matter, Defendants are correct that Sebastiani cannot maintain both a Monell claim against the County and official capacity claims against the individual Defendants. Hafer, 502 U.S. at 25. Accordingly, summary judgment is properly entered against Sebastiani on her official capacity claims against Defendants Kertes, Cerilli Thrasher, and Chew.

As discussed in relation to the substance of Sebastiani's First Amendment political affiliation claim, a reasonable jury could conclude that the individual Defendants' employment decision to hire Sebastiani as Elections Director was at least motivated by Sebastiani changing her party affiliation. It is also reasonable to infer that Gibbon was acting on behalf of Kertes, for whom she was an assistant. Further, there is an issue of fact as to whether Gibbon was acting on behalf of herself; just Kertes; Kertes and Chew as the Republican Commissioners; or all three Commissioners. Therefore, the record reflects that there may be a sufficient causal connection between Defendants' decision to hire Sebastiani as Elections Director and the First Amendment violation of demanding she change her political affiliation to that of the majority of the Board of Commissioners.

---

[5] This argument belies the fact that Cerilli Thrasher was the Democratic Commissioner.

However, as also previously discussed, the record is devoid of evidence linking Sebastiani's termination to the change in her political affiliation – whether or not she "resisted" the change or refused to adopt the proffered explanation for the change, as she alleged. Ten months passed between the change in Sebastiani's political affiliation and her termination. Additionally, there is no evidence of retaliation as a result of her "resisting" changing her political affiliation or for refusing to adopt the proffered explanation.

Accordingly, as to the individual Defendants, the Motion for Summary Judgment is properly granted on Sebastiani's First Amendment political affiliation claim as to any official capacity claims against Kertes, Cerilli Thrasher, and Chew, but denied as to individual capacity claims against the individual Defendants. Further, the Motion for Summary Judgment as to Kertes, Cerilli Thrasher, and Chew is properly granted as to Sebastiani's political affiliation retaliation claim regarding her termination, but denied as to her First Amendment political affiliation claim regarding the demand that she change her political party at the time of hiring.

**B.    Count II: FMLA Discrimination**

In Count II of the Complaint, Sebastiani asserts a claim of discrimination in violation of the FMLA. ECF No. 1 ¶¶ 116-118. In three one-sentence paragraphs, she simply asserts that: she applied for FMLA leave on June 8, 2021[6]; Defendants retaliated against her for applying for FMLA by terminating her on June 18, 2021[7]; and she suffered financial and emotional hardship. Id. Based on these averments, she is clearly asserting an FMLA retaliation claim.

---

[6] While Sebastiani alleges in the Complaint that she applied for FMLA leave on June 8, 2021, ECF No. 1 ¶ 116, the record indicates that she applied for leave on June 5, 2021, ECF No. 64-31 at 12.

[7] While Sebastiani alleges in the Complaint that she was terminated on June 19, 2021, ECF No. 1 ¶ 117, the record indicates that she was terminated on June 18, 2021, ECF No. 58 ¶ 20.

FMLA retaliation claims are controlled by the three-step burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022).

> Under the first step of that framework, a plaintiff must establish a *prima facie* case by showing (1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Upon making these showings, the employer then, under step two, has the burden of producing evidence that presents a legitimate, non-retaliatory reason for having taken the adverse action. If the employer meets this burden, the burden then shifts back to the plaintiff to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.

Canada, 49 F.4th at 346 (internal quotations and brackets omitted).

To demonstrate the third element of *prima facie* case – causation – a plaintiff must point to evidence sufficient to create an inference that a causative link exists between his/her use of FMLA leave and termination. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-81 (3d Cir. 2000). When the "temporal proximity" between the protected activity and adverse action is "unduly suggestive," this "is sufficient standing alone to create an inference of causation and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007). "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" Id. at 232 (quoting Farrell, 206 F.3d at 280).

Once a *prima facie* case is established,

> [t]he burden . . . shifts to [Defendants] to articulate one or more legitimate, nondiscriminatory reasons for its employment decision. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; [Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)]. This burden is one of production, not persuasion, and requires an employer to submit evidence which, presumed true, permits the conclusion that there was a legitimate and nondiscriminatory reason

for its adverse employment action. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).

<u>Duran v. Cnty. of Clinton</u>, 380 F. Supp. 3d 440, 452 (M.D. Pa. 2019).

If the employer proffers a legitimate, non-discriminatory reason for the employment action, the burden shifts back to plaintiff.

> At the third step of the <u>McDonnell Douglas</u> paradigm, the plaintiff may defeat summary judgment by identifying evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Lupyan v. Corinthian Colls. Inc.</u>, 761 F.3d 314, 324 (3d Cir. 2014) (quoting <u>Fuentes</u>, 32 F.3d at 764). A plaintiff must do more than simply claim a decision was wrong or mistaken to discredit a proffered justification. <u>Fuentes</u>, 32 F.3d at 765. The plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the County's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,'" <u>Lichtenstein</u>, 691 F.3d at 310 (quoting <u>Fuentes</u>, 32 F.3d at 765), "and hence infer that the employer did not act for [the asserted] non-discriminatory reasons," <u>Fuentes</u>, 32 F.3d at 765 (alteration in original) (internal quotation marks and citations omitted).

<u>Id.</u>

### 1.    *Prima Facie* Case

In this case, Defendants concede that that Sebastiani has made out the first two requisite elements of a *prima facie* case of FMLA retaliation because she engaged in protected activity by invoking her right to FMLA leave and she suffered an adverse employment decision in her termination by the County. ECF No. 62 at 13. However, Defendants deny that Sebastiani's termination was related to her use of FMLA. <u>Id.</u> They argue that the mere timing of Sebastiani's application for FMLA leave on June 5, 2021 and termination on June 18, 2021, without more, is not enough to establish her FMLA retaliation claim. <u>Id.</u>; ECF No. 64-31 at 12. They also assert that Sebastiani cannot show Defendants' reasons for the termination of her employment were pretextual. <u>Id.</u>

In opposing the Motion for Summary Judgment as to this claim, Sebastiani responds that Defendants' argument fails because the pertinent issue is not the date of her formal application for FMLA leave, but rather the date on which the employer became aware of her need for FMLA leave. ECF No. 65 at 7. Sebastiani states she had spoken to the HR Director about taking FMLA leave, and her doctors' opinion that she should take leave, several times in the six months prior to her formal application in June 2021, which placed Defendants on notice of her medical need for and intent to take FMLA leave. Id.

Defendants reply that Sebastiani fails to proffer any evidence of a causal connection between her need for FMLA leave and her termination. ECF No. 66 at 3-4. They also note that she fails to address the legitimate, non-retaliatory reasons for her termination and only points to her own testimony to support this claim. Id. at 4.

Upon review, to establish a *prima facie* case of FMLA retaliation, Sebastiani must point to evidence sufficient to create an inference that a causative connection exists between her request for FMLA information and/or leave and her termination. Sebastiani testified that she requested FMLA leave on June 5, 2021. ECF No. 64-21 at 12. The record reflects that on June 8, 2021, Sebastiani was placed on paid suspension. ECF No. 64-8. On June 10, 2021, Bevan, the HR Director, provided Sebastiani with information regarding FMLA. ECF No. 64-20. On June 15, 2021, Sebastiani was informed her paid suspension was converted to an unpaid suspension, and she was then terminated as of June 18, 2021. ECF No. 58 ¶¶ 17, 19. For purposes of summary judgment, viewing the record and considering temporal proximity, Sebastiani has adequately established a causal connection between her inquiry and request for FMLA leave and her suspension and termination.

### 2.    Legitimate, Nondiscriminatory Reason

With the burden shifted to Defendants, they have provided legitimate, non-retaliatory reasons for Sebastiani's termination, including, but not limited to, the extensive documented job performance deficiencies outlined in their April 1, 2021, June 8, 2021, and June 15, 2021 letters, ECF Nos. 64-1, 64-3, 64-5, and supporting deposition testimony.

### 3.    Pretext

With Defendants having made the requisite showing as to their nondiscriminatory reasons for termination, the burden shifts back to Sebastiani to show that these reasons were pretextual and the real reason for her termination was retaliation for requesting FMLA leave. As such, Sebastiani must now point to evidence from which the fact finder can reasonably find that her request for FMLA leave was at a minimum a motivating cause of Defendants' actions. Duran v. Cnty. of Clinton, 380 F. Supp. 3d 440, 452 (M.D. Pa. 2019).

Upon review, the record contains several pieces of evidence that create factual issues regarding Defendants' proffered reasons for their termination of Sebastiani's employment, such that a reasonable factfinder could find the proffered reasons "unworthy of credence." Fuentes, 32 F. 3d at 765.[8]

On March 17, 2021, Attorney Gretchen Love of the law firm of Campbell Durrant, P.C. issued an Investigative Report to HR Director Bevan. ECF No. 64-21 In the report, she found that Sebastiani inherited a dysfunctional office that was actively undermining her. Id. at 1. The report also contained information regarding Sebastiani's workplace injury indicating that her employees may have looked down upon her due to related cognitive limitations. Id. at 8. In

---

[8] The Court notes that Sebastiani cites pages 53, 76, and 175 in "ECF 64, Exh. EE" for the proposition that Defendants had constructive notice of her need to take FMLA leave. ECF No. 65 at 7-8. However, ECF No. 64-31, Exhibit EE does not contain the pages that Sebastiani cites. Therefore, this allegation is not supported by the record.

general, the report absolved Sebastiani of certain wrongdoing. Id. Further, on May 7, 2021, Chew texted Sebastiani telling her "not to worry about today. You haven't been in this even 1 year. . . . This will get easier." ECF No. 64-26 at 5. Nonetheless, Sebastiani received disciplinary letters on April 1, 2021 and June 8, 2021. ECF Nos. 64-1, 64-3.

Construing the evidence in the light most favorable to Sebastiani, there are inconsistencies in some of the reasons Defendants gave for her termination. Of note, Sebastiani was simultaneously receiving disciplinary action while also possibly being exonerated of certain mismanagement. ECF Nos. 64-1, 64-3, 64-5, 64-21.

Further, Sebastiani presents no direct evidence that any of the three Commissioners knew about her request for FMLA leave, as of the date of her termination. However, Sebastiani reasonably assumes that HR Director Bevan would have communicated everything with them, including her request for FMLA leave. ECF 64-31 at 14; ECF No. 63 ¶ 232. The record demonstrates that Bevan did, in fact, meet with the Commissioners without Sebastiani, though there is no specific date regarding that meeting in the record. ECF No. 63 ¶ 8; ECF No. 64-32 at 2. In sum, Sebastiani has raised a factual issue, albeit barely, regarding the true reason for her termination vis-a-vis her request for FMLA leave on June 5, 2021. ECF No. 64-31 at 151.

Accordingly, the Motion for Summary Judgment is denied as to Sebastiani's FMLA retaliation claim.

### C.    Count III: Section 1983 – Deprivation of Liberty Interest

It is well established that "reputation *alone* is not an interest protected by the Due Process Clause." Versarge v. Township of Clinton, New Jersey, 984 F.2d 1359, 1371 (3d Cir. 1993) (citing Paul v. Davis, 424 U.S. 693, 701-712 (1976)) (emphasis added). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a

stigma to his reputation plus deprivation of some additional right or interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) citing Paul, 424 U.S. at 701. This has been come to be known as the "stigma plus" test. See Graham v. City of Philadelphia, 402 F.3d 139 (3d Cir. 2005). "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such a deprivation occurs, the employee is entitled to a nameclearing hearing." Hill, 455 F.3d at 236. A plaintiff must also allege that she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property and that the procedures available to her did not provide her with due process of law. Id. at 233-34.

Satisfying the stigma component requires the plaintiff establish the purportedly stigmatizing statement was: (1) published, (2) substantially and materially false, and (3) infringed upon the "reputation, honor, or integrity" of the employee. See Id. at 236; Brown v. Montgomery County, 470 F. App'x 87, 91 (3d Cir. 2012) (nonprecedential) (citing Ersek v. Township of Springfield, 102 F.3d 79, 83-84 (3d Cir. 1996)).

In their Brief in Support of Motion for Summary Judgment, Defendants argue that Sebastiani's deprivation of liberty claim fails for five reasons. ECF No. 62 at 17. First, Defendants gave Sebastiani several due process opportunities to clear her name. Id. Second, no charges against Sebastiani have been proven false. Id. Third, no Defendant publicly disseminated any false statements connected to Sebastiani's employment or termination. Id. Fourth, Sebastiani has not produced any news article or media statement with false information. Id. Finally, Sebastiani has not established that she has suffered any damages as a result of the alleged stigma. Id. at 18.

Sebastiani responds by arguing that the June 9, 2021 newspaper article regarding her suspension due to the May 2021 primary election issues "created the impression that Plaintiff was suspended for misconduct." ECF No. 65 at 9. In addition, she asserts that the due process hearings concerning her termination did not constitute a "nameclearing hearing." Id. Sebastiani also asserts she has produced evidence of damages beyond her inability to find work in her chosen field. Id.

In their Reply, Defendants correctly point out that the news article Sebastiani attached to her Response Brief makes no statement as to the reason she was suspended. ECF No. 66 at 4. Defendants also reiterate their argument that Sebastiani has not demonstrated damages. Id.

Upon careful review of the record, including the four news articles contained in ECF Nos. 64-14, 64-18, and 65-2, the Court has not identified any false or defamatory statements regarding Sebastiani. The two articles in ECF No. 64-14 discuss the issues regarding the incorrect mail-in ballots, which omitted an electoral race. The first article, "Incorrect ballots mailed to some Mt. Pleasant voters, Westmoreland County says," does not name Sebastiani or blame anyone in the Elections Bureau. Id. at 1-2. In the second article, "Westmoreland officials seek answers for Mt. Pleasant Township ballot error," Sebastiani takes responsibility for the incorrect ballots. Id. at 3. It does not contain any information regarding Sebastiani that she herself does not provide. The article at ECF No. 64-18, "Westmoreland primary results receive preliminary certification," states only factual issues regarding the posting of election results to the county website and does not connect those issues to Sebastiani's conduct. Even Plaintiff's exhibit, ECF No. 65-2, "Rookie Westmoreland County election director suspended with pay," states that "No reason was given for [Sebastiani's] suspension," and "Commissioners have never publicly blamed Sebastiani for any of the missteps or for staff departures." Id. at 2. That same

article also notes that no Commissioner provided any type of statement regarding Sebastiani. <u>Id.</u> It also states that Sebastiani herself declined to comment. <u>Id.</u>

Sebastiani did testify in her deposition that the Commissioners "said, in the paper that . . . there were mistakes being made that affected the elections. . . ." ECF No. 64-31 at 21. However, there are no articles in the record that defame Sebastiani, because, as the record reflects, mistakes were being made in the Elections Bureau, including incorrect ballots and delays in posting the election results.

Without a "stigma" – the creation and public dissemination of a false and defamatory impression – Sebastiani's deprivation of liberty claim fails as a matter of law. <u>See</u> <u>Taylor v. Derry Twp. Sch. Dist.</u>, No. 20-1363, 2022 WL 80479, at *5 (M.D. Pa. Jan. 7, 2022). There is no evidence in the record that any Defendant created or disseminated false statements regarding Sebastiani.

Accordingly, the Motion for Summary Judgment is properly granted as to Sebastiani's deprivation of liberty interest claim in Count III.

### D.    Count IV: Workers' Compensation Discrimination

In Count IV of the Complaint, Sebastiani asserts a pendant state law claim of workers' compensation discrimination and retaliation in two paragraphs, each consisting of a single sentence. ECF No. 1 ¶¶ 130-131. Specifically, she claims that Defendants displayed animus against her by mocking and criticizing symptoms from a 2018 workplace injury. <u>Id.</u> Also, Sebastiani complains that after she sought to reinstate her workers compensation wage benefits in June 2021, she was terminated. <u>Id.</u>

In support of their Motion for Summary Judgment, Defendants argue that Sebastiani presented no evidence to support her claim that Defendants violated public policy by displaying

an animus against her for filing a workers' compensation claim by mocking and criticizing her symptoms that arose from the injury she sustained. ECF No. 62 at 18-19. They also argue that, similar to her FMLA claim, Sebastiani's termination for legitimate, nondiscriminatory reasons was not pretextual. Id. at 19. Further, Sebastiani's receipt of workers' compensation benefits (medical bills) was ongoing, so it is insincere for Sebastiani to claim that the County suddenly wanted to terminate her employment based on her request to reinstate the wage portion of those benefits. Id. at 19-20.

Sebastiani responds that Defendants' arguments fail because they do not resolve factual disputes in favor of the non-moving party, fail to draw reasonable inferences from the record, and misstate her theory of the case. ECF No. 65 at 9-11. She implies that the Commissioners were aware of her workers' compensation claim because of her "observable symptoms and frequent doctors appointments." Id. at 10. She otherwise incorporates her arguments in opposition to summary judgment on the FMLA claim. Id.

### 1.    Retaliation

At the outset of consideration of this claim, it must be noted that:

Pennsylvania courts recognize a public policy exception to at-will employment when an employee is terminated by his employer in retaliation for filing a Workers' Compensation claim against the employer. Shick v. Shirey, 552 Pa. 590, 716 A.2d 1231 (Pa. 1998). In the Shick case, the plaintiff filed his workers' compensation claim after suffering an injury at work, and he received workers' compensation during his recovery. Upon recovery from the injury, the plaintiff attempted to return to work for the same employer but the employer refused to re-hire him allegedly because of his workers' compensation claim. Id. at 593, 716 A.2d 1231.

"The Workers Compensation Act (the "Act") strikes a balance between the employer and the employee in that it restricts the remedies available to an employee for injuries sustained in the course of employment and closes to the employee any recourse against the employer at common law for negligence." Tsarnas v. Jones & Laughlin Steel Corporation, 488 Pa. 513, 412 A.2d 1094 (1980). The Pennsylvania Supreme Court noted that the "historical balance would

be disrupted if the employer could terminate an employee for filing a workers' compensation claim." <u>Shick</u>, 552 Pa. 590, 603, 716 A.2d 1231. "If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right." <u>Shick</u>, 552 Pa. 590, 604, 716 A.2d 1231 (<u>quoting</u> <u>Frampton v. Central Indiana Gas Co.</u>, 260 Ind. 249, 297 N.E.2d 425 (1973)).

<u>Dickerson v. Insource Performance Sol.</u>, 96 F. Supp. 3d 460, 463 (M.D. Pa. 2015).

A workers' compensation retaliation claim is analyzed under the standards employed to adjudicate Title VII retaliatory discharge claims. <u>See, e.g.</u>, <u>Kieffer v. CPR Restoration & Cleaning Serv., LLC</u>, 200 F. Supp. 3d 520, 539 (E.D. Pa. 2016). Accordingly, an employee must establish that: (1) she engaged in protected activity; (2) she suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) a causal connection exists between the protected activity and the employer's adverse action. <u>Id.</u> (citing <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 187 (3d Cir. 2003)); <u>Muhammad v. Matrix Med. Network</u>, No. 20-2244, 2021 WL 4399649, at *5 (E.D. Pa. Sept. 27, 2021).

If the employee is able to show these elements, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. <u>Id.</u> If the employer satisfies this burden, the burden shifts back to the employee to prove that the employer's reason is pretextual by discrediting the proffered reason or adducing evidence to demonstrate that retaliatory animus was a motivating factor in the employer's decision. <u>See</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994).

<u>Smith v. R.R. Donnelley & Sons Co.</u>, No. 10-1417, 2011 WL 4346340, at *3 (E.D. Pa. Sept. 16, 2011).

### a.    *Prima facie* case

Upon review, Sebastiani's worker's compensation claim had been ongoing since November 2018, and her medical benefits and bills were still being paid, but she was not receiving the wages. ECF No. 64-31 at 8-9. At some point in June 2021, she applied for her

workers' compensation wage benefits to be reinstated. Id. at 20. As previously noted, on June 8, 2021, Sebastiani was placed on paid suspension. ECF No. 64-8. On June 15, 2021, Sebastiani was informed her paid suspension was converted to an unpaid suspension, and she was terminated as of June 18, 2021. ECF No. 58 ¶¶ 17, 19.

It is Sebastiani's burden to establish a *prima facie* case of retaliation. Smith, 2011 WL 4346340, at *3. The Third Circuit recently noted that "temporal proximity is not a necessary condition of a *prima facie* causation showing" if there is other evidence to support causation. LaFiandra v. Accenture, et al., No. 23-3050, slip op. at 8-9 (3d Cir. Dec. 16, 2024).

Here, however, temporal proximity is apparent. In her deposition, Sebastiani testified that she applied for the workers' compensation (wage) benefits at or around the same time as she applied for FMLA leave. ECF No. 64-31 at 20. The best date she could provide for her workers' compensation application was a "guesstimate" of June 2021. Id. The record reflects that Sebastiani applied for FMLA leave on June 5, 2021. ECF No. 64-21 at 12. With that context, it is a reasonable inference that Sebastiani requested workers' compensation wage benefits at or around June 5, 2021, prior to her paid suspension on June 8, 2021. Construing the facts in the light most favorable to Sebastiani, the Court finds that this is sufficient to make out a *prima facie* case of workers' compensation retaliation.

**b.    Legitimate, nondiscriminatory reason**

Having made out a *prima facie* case, the burden now shifts to Defendants to "articulate a legitimate, non-discriminatory reason for its action." Smith, 2011 WL 4346340, at *3. As discussed in Section V.B.2, "Count II: FMLA Discrimination, Legitimate, Nondiscriminatory Reason," Defendants have provided legitimate, non-retaliatory reasons for Sebastiani's termination, with the extensive job performance deficiencies outlined in their April 1, 2021, June

8, 2021, and June 15, 2021 letters, ECF Nos. 64-1, 64-3, 64-5, and supporting deposition testimony.

### c.      Pretext

With Defendants demonstrating a legitimate, nondiscriminatory reason for Sebastiani's termination, the burden shifts back to her to discredit Defendants' proffered explanation for her termination. Smith, 2011 WL 4346340, at *3. Because the factors and evidence surrounding Sebastiani's termination are the same as those articulated in the Court's analysis of her FMLA retaliation claim, the Court's discussion in Section V.B.3, "Count II: FMLA Discrimination, Pretext," is hereby incorporated by reference. Accordingly, Plaintiff has established a question of fact regarding the true reason for her termination as related to her request to reinstate her workers' compensation wage benefits in June 2021, and summary judgment should be denied as to this retaliation claim. ECF No. 64-31 at 20.

### 2.      Discrimination

The Court now turns to the second part of Sebastiani's workers' compensation discrimination claim: whether she was subjected to animus/harassment by Defendants mocking and criticizing her symptoms that arose as a result of a 2018 workplace injury with the County.

At the outset, the Court notes that Sebastiani fails to articulate any applicable legal standards to support this claim in the Complaint or her Brief in Response to Defendants' Motions [sic], nor does she cite any cases regarding the elements of her alleged workers' compensation discrimination/harassment claim. ECF Nos. 1, 58, and 65. Defendants' Brief in Support of their Motion for Summary Judgment and Reply fail to address this deficiency. ECF Nos. 61-67. Of note, there is no evidence of record that Sebastiani filed any state or federal administrative charges of discrimination.

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party." NVR, Inc. v. Majestic Hills, LLC, 670 F. Supp. 3d 206, 214 (W.D. Pa. 2023), reconsideration denied, No. 18-1335, 2023 WL 3726895 (W.D. Pa. May 30, 2023) (quoting Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)). "If the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial,' summary judgment is warranted." Robinson v. Consol Pennsylvania Coal Co. LLC, 425 F. Supp. 3d 433, 441 (W.D. Pa. 2019) (quoting Celotex, 477 U.S. at 324 (1986)).

At this late stage of the litigation, Sebastiani has failed to articulate any statutory or common law basis for this alleged cause of action. ECF Nos. 1 and 65. In short, she has not "put up" a sufficient legal basis to support her claim. Without any foundation in law for Sebastiani's workers' compensation discrimination/harassment claim, the Motion for Summary Judgment is properly granted as to this portion of Sebastiani's claim.

Accordingly, the Motion for Summary Judgment is denied as to Sebastiani's workers' compensation retaliation claim regarding her termination. However, the Motion for Summary Judgment is granted as to Sebastiani's workers' compensation discrimination claim regarding any animus/harassment she experienced as a result of her workers' compensation claim.

### E.    Count V: Intentional Infliction of Emotional Distress

In Count V of the Complaint, Sebastiani asserts a pendant state claim of intentional infliction of emotional distress. ECF No. 1 ¶¶ 120-127. Sebastiani claims that Defendants were aware of her heightened sensitivity due to symptoms arising from her concussion in 2018, and engaged in harassment with the tortious intent of inflicting severe and acute emotional distress on her. Id. ¶ 121. Consequently, Sebastiani suffered severe emotional distress. Id. ¶ 122.

To prove a claim of intentional infliction of emotional distress, the following elements must be established:

> (1) the conduct must be extreme and outrageous;
> (2) it must be intentional or reckless;
> (3) it must cause emotional distress; and
> (4) that distress must be severe.

Hooten v. Penna. College of Optometry, 601 F.Supp. 1151, 1154 (E.D. Pa.1984) (citing Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979)).

A plaintiff must demonstrate conduct by the defendant of "an extreme and outrageous type." Sloan v. United States, 603 F. Supp. 2d 798, 806 (E.D. Pa. 2009). The Third Circuit has held that it is extremely rare to find conduct in the employment context which can rise to the level outrageousness necessary to provide a basis for recovery under intentional infliction of emotional distress. Id. at 807.

In the Motion for Summary Judgment, Defendants argue that Sebastiani's intentional infliction of emotional distress claim must be dismissed, because her allegations do not rise to the level of egregiousness required to sustain a claim for intentional infliction of emotional distress. ECF No. 62 at 21. Without sufficiently outrageous conduct, Sebastiani's claim cannot survive. Id.

Sebastiani responds that the facts support the inference that Defendants were aware of her fragile emotional state and intentionally pursued a campaign of harassment connected to an animus against that fragile emotional state. ECF No. 65 at 11. She argues that this meets the threshold of the behavior necessary for a claim of intentional infliction of emotional distress. Id.

The standard for conduct to rise to a claim of intentional infliction of emotion distress is quite high. A plaintiff must demonstrate that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (internal quotation marks and citation omitted). "Pennsylvania courts have been chary to declare conduct 'outrageous' so as to permit recovery . . . ." Cheney v. Daily News L.P., 641 F. App'x 197, 200 (3d Cir. 2016), on reh'g, 654 F. App'x 578 (3d Cir. 2016) (internal citations omitted). "Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children." Id. (citing Salerno v. Phila. Newspapers, Inc., 546 A.2d 1168, 1172 (Pa. Super. 1988) (collecting cases)).

Hare v. H&R Indus., Inc., 67 F. App'x 114 (3d Cir. 2003), which Sebastiani cited in support of her claim, is one such case that reaches that high standard. In Hare, the female plaintiff was subject to an ongoing campaign of sexual harassment at her place of work. Id. at 116-118. Over the course of 20 months, plaintiff was groped by multiple coworkers; was called demeaning names; experienced unwanted discussion about her body and sexuality; shown pornography by her supervisor; and was the subject of an unfounded rumor that she was having an affair. Id. at 116-117.

> Not only did [plaintiff's] supervisors acquiesce in the harassment, they were directly responsible for much of the harassment. Furthermore, not only did [defendant employer] allow this atmosphere of ongoing and extreme hostile work environment to continue to exist, it actually encouraged it. For example, instead of remedying the situation, [plaintiff's] supervisor told [plaintiff] to "give back."

Id. at 121. Plaintiff was terminated from her position and attempted suicide twice as a result of her workplace harassment. Id. at 118. The Third Circuit affirmed the District Court's finding that plaintiff suffered emotional damages intentionally inflicted by her employer. Id. at 121.

In the instant case, Sebastiani alleges Defendants verbally harassed her. This behavior does not rise to the level of necessary egregiousness or outrageousness to state a claim of

intentional infliction of emotion distress. If true, Defendants' conduct is improper, but it is not so extreme that it "go[es] beyond all possible bounds of decency." Cox, 861 F.2d at 395. See, e.g., Robinson v. Nat'l R.R. Passenger Corp, 821 F. App'x 97, 102 (3d Cir. 2020) (holding that the defendant company did not engage in outrageous behavior "by scapegoating [plaintiff] for the April 3, 2016 collision and by manipulating the disciplinary proceedings against him."); Remp v. Alcon Lab'ys, Inc., 701 F. App'x 103, 108 (3d Cir. 2017) (holding that the defendant company did not engage in outrageous behavior "when one of its employees warned [plaintiff] of a potential lawsuit and threatened to report her to [defendant's] internal discipline department"); Hill v. City Of Philadelphia, 331 F. App'x 138, 140 (3d Cir. 2009) (holding that an employer's pattern of harassment and retaliation was not intentional infliction of emotional distress).

Accordingly, the Motion for Summary Judgment is properly granted as to Sebastiani's intentional infliction of emotional distress claim.

## VI.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed on behalf of Defendants Westmoreland County, Sean Kertes, Gina Cerilli Thrasher, and Doug Chew, ECF No. 61, is properly granted in part and denied in part as follows.

The Motion for Summary Judgment is granted as to:

- All official capacity claims against Defendants Kertes, Cerilli Thrasher, and Chew;

- Count I, in part, as to the First Amendment political affiliation retaliation claim regarding Sebastiani's termination;

- Count III, in entirety, as to the deprivation of liberty interest claim;

- Count IV, in part, as to the workers' compensation discrimination/harassment claim; and

- Count V, in entirety, as to the intentional infliction of emotional distress claim.

The Motion for Summary Judgment is denied as to:

- Count I, in part, as to the First Amendment political affiliation claim regarding the demand that Sebastiani change her political party registration at the time of hiring;

- Count II, in entirety, as to the FMLA retaliation claim; and

- Count IV, in part, as to the workers' compensation retaliation claim regarding Sebastiani's termination.

An appropriate order follows.

Dated: December 20, 2024                    BY THE COURT:

                                            MAUREEN P. KELLY
                                            UNITED STATES MAGISTRATE JUDGE

cc:    All counsel of record by Notice of Electronic Filing