**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOANN SEBASTIANI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 21-1114 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | Re: ECF No. 61 |
| WESTMORELAND COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

**KELLY, Magistrate Judge**

Plaintiff JoAnn Sebastiani ("Sebastiani") initiated this action against Defendants Westmoreland County (the "County"), Sean Kertes ("Kertes"), Gina Cerilli Thrasher ("Cerilli Thrasher"), and Doug Chew ("Chew") (collectively, "Defendants"), alleging five claims arising from her employment by the County as the Elections Director. ECF No. 1.

On December 20, 2024, this Court issued an Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment. ECF Nos, 68, 69. Defendants filed an appeal. ECF No. 70.

This matter come before the Court on the mandate by the United States Court of Appeals for the Third Circuit in which the Third Circuit vacated in part the Judgment entered by this Court on December 20, 2024, with instructions to address qualified immunity. ECF Nos. 73, 74.

## I. The Mandate

In the December 20, 2024 Order, this Court denied Defendants' Kertes, Cerilli Thrasher, and Chew's Motion for Summary Judgment Motion, ECF No. 61, at Count I in part, as to the First Amendment political affiliation claim regarding their demand that Sebastiani change her political party registration at the time of her hiring as Elections Director. ECF No. 69 at 1. On

appeal, the Third Circuit held that by denying summary judgment, this Court implicitly denied the Commissioners' qualified immunity defense, and thus, the issue was immediately appealable under the collateral order doctrine. Sebastiani v. Westmoreland Cnty., No. 25-1106, 2026 WL 263481, at *1 (3d Cir. Feb. 2, 2026). The Third Circuit instructed as follows:

> The District Court failed to consider the Commissioners' qualified immunity defense when it denied their motion for summary judgment on this claim. . . . We will vacate the order granting summary judgment on this claim and remand to the District Court for consideration of the Commissioners' qualified immunity defense.

Id.[1]

## II. Factual and Procedural Record

When considering the Motion for Summary Judgment, this Court found that Sebastiani admitted all facts in Defendants' Concise Statement of Material Facts ("CSMF"), ECF No. 63, "and supported by evidence of record," for noncompliance with L.C.R. 56.C.1(a)-(c), ECF No. 68 at 9-10. Sebastiani did submit four additional exhibits in her Response Brief, ECF Nos. 65-1 through 65-4.

When interviewing candidates for the position of Elections Director, the Board of Commissioners made it clear that they did not want someone who was active in politics. ECF No. 63 ¶ 90. The partisan break down of the Board of Commissioners in 2020 was two Republicans (Chew and Kertes) and one Democrat (Cerilli Thrasher). Id. ¶ 87. On Friday, August 7, 2020, the Commissioners approached Sebastiani about taking the Elections Director

[1] The Court notes that when briefing the issue initially, Defendants did not provide any legal analysis of their qualified immunity defense as to Count I, which alleges Sebastiani was denied her right to political affiliation. In their Brief in Support of Summary Judgment, they simply stated, "It also follows that the lack of Constitutional violation should afford qualified immunity for the individually named Defendants on this claim." ECF No. 62 at 12. Sebastiani's Brief in Response to Defendants' Motions for Summary Judgment, as well as Defendants' Reply to Sebastiani's Brief in Response to Motion for Summary Judgment, do not address the issue of qualified immunity. ECF Nos. 65, 66, *seriatim*.

position. Id. ¶ 77. This initial contact was by telephone. Kertes took the lead on the call; Cerilli Thrasher was also on the call and Chew was not. ECF No. 80-1 at 10 (Sebastiani Dep. at p. 35). Kertes praised Sebastiani and wanted to promote her to Elections Director because he thought she did a fantastic job in the Tax Claim Department. Id. ¶ 93. Sebastiani met with Kertes and Cerilli Thrasher to discuss the position the following Monday, on August 10, 2020. Id. ¶ 78. The Human Resource Director, Alexis Bevan ("Bevan"), called Sebastiani on Wednesday, August 12, 2020 and offered her the position. Id. ¶ 79. The Westmoreland County Personnel Action form was signed by Kertes and Cerilli (but not Chew), as well as Bevan; it is dated August 12, 2020 and lists the effective date of Sebastiani's promotion and transfer as August 17, 2020. ECF No. 64-7. Sebastiani accepted and started in the Elections Director position effective Monday, August 17, 2020. ECF No. 63 ¶ 80.

By failing to respond to the Defendants' Concise Statement of Material Facts, Sebastiani has admitted that political party registration does not factor into consideration of Directors. Id. ¶ 85. She has also admitted that on August 12, 2020, the same day that she accepted the position, Kertes' secretary, Francine Gibbon ("Gibbon"), called Sebastiani and informed her that it was imperative that Sebastiani change her registered party affiliation from Democrat to Republican, explaining "[t]hey want more Republican Directors, and Commissioner Kertes is getting heat from County officials because you are a Democrat." Id. ¶ 81 (citing Plaintiff's Complaint, ECF No. 1). Gibbon told Sebastiani to say she changed her political party registration because she did not like the Democratic Vice-Presidential candidate, (Kamala Harris), who was African American. Id. ¶ 83.

By failing to respond to the Defendants' Concise Statement of Material Facts, Sebastiani has also admitted that none of the three Commissioners personally told Sebastiani that she had to

be registered with a certain political party to be the Elections Director. Id. ¶ 84. At her deposition, Sebastiani testified to the same, when the following exchange occurred:

> Q: Did any of the three commissioners, Kertes, Cerilli or Chew, ever tell you, personally, that you had to be a certain political party to have the director of elections position?
>
> A: No.

ECF No. 80-1 (Sebastiani Dep. at 39).

Upon review, Defendant Chew's involvement in the hiring process is at best, minimal. He did not agree to hire Sebastiani because he did not think she was qualified. ECF No. 63 ¶¶ 99-100. Commissioner Chew cannot remember any time where they have asked anyone for their party affiliation. Id. ¶ 105. Chew did not sign the Personnel Action form which authorized the transfer of Sebastiani's employment to the new position effective August 17, 2020. ECF No. 64-7. Sebastiani does not remember him being on the phone when the offer of the position was discussed. ECF No. 80-1 at 10 (Sebastiani Dep. at 35).

Cerilli Thrasher was not aware of any discussions that there were too many Democrats in Director-level positions or too many Republicans. Id. ¶ 86.

By failing to respond to the Defendants' Concise Statement of Material Facts, Sebastiani has also admitted that Defendant Kertes was not aware of Sebastiani's allegation that Gibbon told her that she had to change her political party to take the Election Director position, and further, admits that Kertes did not direct Gibbon to do so. Id. ¶¶ 106-107.

Sebastiani's deposition testimony at pages 30-33, cited in her Supplemental Brief, ECF No. 78 at 2-3, as well as in her initial Brief in Opposition to the Motion for Summary Judgment, ECF No. 65 at 4-5, contradicts some of the key facts to which she has admitted by virtue of her

counsel's failure to respond to the Concise Statement of Material Facts. Sebastiani testified that the following exchange took place between Sebastiani and Gibbons:

> She called me on the phone in the tax office and said that they wanted to offer me the position, but they wanted me to change my political affiliation because they wanted every office -- they called them "row offices" -- like every elected office to be Republican Party. … She said that [Jeff Balzer, the Controller] was really upset and speaking out to them that, I guess, they were going to offer me the job and -- or did offer me the job at the time -- they were waiting for me to answer -- and that he, you know, wanted a republican person in that position. They all did.

ECF No. 80-1 at 9 (Sebastiani Dep. at 30-31). Sebastiani also testified:

> Q: How do you know that Commissioner Kertes asked Francine [Gibbon] to ask you to do that?
>
> A: She told me.

Id. Sebastiani also testified that the conversation between Sebastiani and Gibbon occurred prior to the job offer:

> Q. And then, how soon after [Alexis called with the offer] that did Francine Gibbon call you?
>
> A. Oh, no. So after -- on Monday, when I met with them -- she called me like the next day.
>
> Q. On Tuesday?
>
> A. Uh-huh. Then Alexis offered me on Wednesday. And then, Thursday or Friday morning she said, you know, we want -- they want you to take this job and they want you to go in there on Monday.
>
> Q. Who said this?
>
> A. Alexis said the commissioners said, yes.
>
> Q. And I assume you accepted it at that point?
>
> A. I did. Uh-huh.
>
> Q. So when did you change your political party, timingwise?

> A. It was that same -- same day, when she called me, because she would not take no for an answer.

Id. at 10 (Sebastiani Dep. at 37-38). Sebastiani testified that Gibbon, "had [Sebastiani] scan over, to prove that [Sebastiani] did it." Id. (Sebastiani Dep. at 38).

Record evidence provided by Sebastiani includes the following. Three days after this phone call, there was a text message exchange between Sebastiani and Ms. Gibbon, wherein Sebastiani said, "Good morning, Francine! I received my voters registration card in the mail yesterday, good thing because it was dated Monday . . ." to which Ms. Gibbons responded, "Whoo hoo, welcome to the R world." ECF No. 65 at 5 and ECF No. 78 at 2 (citing ECF No. 64-26 (Exhibit EE) at 1. Sebastiani changed her political party based solely on the phone call from Gibbon. ECF No. 63 ¶ 82; ECF No. 80-1 (Sebastiani Dep. at 38).

This Court previously held:

> As discussed in relation to the substance of Sebastiani's First Amendment political affiliation claim, a reasonable jury could conclude that the individual Defendants' employment decision to hire Sebastiani as Elections Director was at least motivated by Sebastiani changing her party affiliation. It is also reasonable to infer that Gibbon was acting on behalf of Kertes, for whom she was an assistant. Further, there is an issue of fact as to whether Gibbon was acting on behalf of herself; just Kertes; Kertes and Chew as the Republican Commissioners; or all three Commissioners. Therefore, the record reflects that there may be a sufficient causal connection between Defendants' decision to hire Sebastiani as Elections Director and the First Amendment violation of demanding she change her political affiliation to that of the majority of the Board of Commissioners.

ECF No. 68 at 20.

Following remand, the question before the Court is, are any of the Defendant Commissioners entitled to qualified immunity under the uncontroverted facts and circumstances of this case.

On March 11, 2026, this Court entered a briefing schedule as to the qualified immunity issue. ECF No. 75. On April 8, 2026, Defendants filed their Supplemental Brief on Qualified

Immunity Defense, ECF No. 77, and on May 11, 2026, Sebastiani filed her Supplemental Brief regarding Qualified Immunity. ECF No. 78. The Court further directed Defendants to file a complete version of Sebastiani's deposition. ECF Nos. 79, 80.

The matter of the Commissioner's qualified immunity defense is now ripe for disposition.

## III. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 322; Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Mil. & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

As an affirmative defense, the burden of establishing qualified immunity falls on the official claiming it. See Burns v. Pa. Dep't of Corr., 642 F.3d 163, 176 (3d Cir. 2011). Qualified

immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). Courts should not "define clearly established law at a high level of generality." Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011). Though a court need not identify a case "directly on point" for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 741.

To determine if an official's conduct is entitled to qualified immunity, courts ask two questions: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a federal right; and (2) whether the right at issue was clearly established when the conduct took place. See Tolan v. Cotton, 572 U.S. 650, 655–56 (2014). The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." District of Columbia v. Wesby, 583 U.S.48, 63 (2018).

**IV. Discussion**

Defendants argue that summary judgment should be entered in their favor because supervisors are only liable if their acts are the moving force behind the subordinate's constitutional violation, and they are directly and actively involved, and second, because the Commissioners did not violate a clearly established constitutional right. ECF No. 77 at 2-5.

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified

immunity was properly granted or denied, the Third Circuit requires consideration of whether: (1) the conduct violates a constitutional right, and (2) the right was clearly established when it was allegedly violated. Spahr v. Collins, No. 22-2787, 2024 WL 3738878, at *2 (3d Cir. Aug. 9, 2024) (citing Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021). Courts may begin with either question, and an answer in the negative to either entitles the official to qualified immunity. Spahr, 2024 WL 3738878, at *2.

> To determine whether a right is clearly established, we must define the right allegedly violated at the appropriate level of specificity. This requires us to frame the right in light of the specific context of the case, not as a broad general proposition. Once we define the right, we look for factually analogous Supreme Court precedent, as well as binding opinions from our own Court to determine whether the right was clearly established. If there is no such binding precedent, we examine whether there is a robust consensus of cases of persuasive authority in the Courts of Appeals. District court opinions may also be relevant to the determination of when a right was clearly established for a qualified immunity analysis. There need not be a case explicitly holding the specific conduct unlawful. Rather, the contours of the right must be sufficiently clear such that a reasonable official would understand that her conduct was unlawful under the then-existing law.

Id. (internal citations and quotations omitted).

Defendants argue, the law was not clearly established because there is no "Supreme Court precedent, a binding statement from our circuit, or consensus of authority from other circuits who have spoken on the topic that a Commissioner's secretary's unauthorized request to an Elections Director to change party affiliation involves a 'clearly established' constitutional right." ECF No. 77 at 5, citing Spahr, 2024 WL 3738878, at *2-4 (internal quotations omitted).

In opposition, Sebastiani argues she has made out a prima facie case of political affiliation discrimination and it is unreasonable to suppose that the Defendants would engage directly with Sebastiani the topic of her changing from a registered Democrat to a registered Republican, and would prefer to go through an intermediary such as Gibbon. Based on the record

evidence, Sebastiani argues, the entire interaction supports the reasonable inference that Defendants asked her to switch parties as a condition of her employment, in violation of her clearly established right. ECF No. 78 at 2-3.

Upon further review, the record raises a genuine dispute of fact such that it is reasonable to infer that Gibbon was acting on behalf of Kertes, for whom she was an assistant. Sebastiani testified the Kertes asked Gibbon to ask Sebastiani to change parties. Further, viewing the facts in the light most favorable to Sebastiani, as the Court must, there is an issue of fact as to whether Gibbon was acting on behalf of herself; just Kertes; Kertes and Chew as the Republican Commissioners; or all three Commissioners. Sebastiani testified that Gibbon told her the "they all wanted a Republican in that position."[2] There is also record evidence to the contrary. Plaintiff admits or does not dispute that neither Commissioner Kertes nor any Commissioner directly requested or pressured Plaintiff into changing her political affiliation, directed that this request be made, or even knew that Plaintiff had been allegedly contacted by Gibbon. Also, there is a factual dispute as to when the conversation with Gibbon took place; Plaintiff testified that it took place prior to her accepting the job. Therefore, the Court finds that there are genuine issues of material fact[3] such that Defendants' Motion for Summary Judgment based on the grounds of qualified immunity is denied.

---

[2] The Court must "analyze separately, and state findings with respect to, the specific conduct of each [Commissioner]." Minor v. Delaware River & Bay Auth., 70 F.4th 168, 171-72 (3d Cir. 2023) (quoting Grant v. City of Pittsburgh, 98 F.3d 116, 126 (3d Cir. 1996).

[3] If shown that the defendants directed Gibbon to tell Sebastiani to change her political affiliation, this is a constitutionally protected interest under the First Amendment. Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270, 275 (3d Cir. 2007) (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990) (First Amendment protects public employees not only from politically motivated discharge, but also from promotion, transfer, recalls, and other hiring decisions conditioned on political affiliation, unless the government can demonstrate that party affiliation is a proper requirement for the position); Lint v. Cnty. of Fayette, No. CIV.A.

## V. Conclusion

Accordingly, Defendants are not entitled to qualified immunity as to Count I and their Motion for Summary Judgment is denied as to the remainder of Count I, the First Amendment political affiliation claim regarding the demand that Sebastiani change her political party registration at the time of hiring.

AND NOW, this 5th day of November, 2026, the Motion for Summary Judgment filed on behalf of Defendants Sean Kertes, Gina Cerilli Thrasher, and Doug Chew, ECF No. 61, is DENIED as to the First Amendment political affiliation claim regarding the demand that Sebastiani change her political party registration at the time of hiring.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

BY THE COURT:

s/ *Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing

---

10-321, 2011 WL 2650014, at *7 (W.D. Pa. July 5, 2011) (circumstantial evidence suffices to show defendants awareness of change in party affiliation).